into 16-2272 voter verified versus premier election solutions. Thank you, sir, whenever you're ready. May it please the court, my name is Anthony Provatola, I represent Voter Verified Incorporated with regard to this appeal, which is essentially one taken from the district court on the matter of Rule 60B motion for relief from final judgment. The final judgment that we're dealing with in this case was one that was entered upon a summary judgment that was by basically under the ruling of Muni Auction versus, I forget a relationship of either agency or contractual relationship among parties who are practicing a method patent or process patent and the challenge to the court here was, I guess the basic challenge to the court was the fact that Judge Mendoza did not, he was not the original judge on the case, it was Judge Fawcett, I guess it's pronounced. And one of the things that he states in his order was he was sort of like fixated on the fact that they had to look through the entire record in order to learn what had occurred. Judge Fawcett is still on the bench, but she elected not to participate in response to this motion, so they laid it at his doorstep and so apparently he found that on hers. There's no dispute, is there, that the standard here is an abuse of discretion? Yes, it is, that is the standard. So can you just kind of focus in on how or where the abuse of discretion exists with this? Yes, of course, your honor. That is very, very important. To begin with, the judge denied that there was any change in the law with respect to the issue of muni auctions. One of the things that he specifically stated in his order was that there was no change in the law and the law remained the same and he went on to cite different selected portions of the opinions to enforce that. Now, going to the fact that that is clearly something which is an error of law. Well, I thought that at least on the 60B6 motion, I have a quote here listed that the district court said something more than a mere change of the law is necessary to provide grounds for 60B6. That's right. So that suggests that they accepted that arguably there was a change in the law and they said even notwithstanding the change in the law, and they relied on the Ritter four-part test. Are you saying that as a matter of law that's wrong, that the standard they applied was the wrong standard? No, the 60B6 requires, 60B6 and 60B5 require a change in the law, they do require more things than that. Right. Right. In the case of 60B5, there must be some perspective component in the determination, perspective component in the determination that will govern future proceedings and that's the thing that he may be referring to. And the other side of it is that we show that with the Agostini decision. The Agostini decision from the Supreme Court made it pretty clear, I think, that any wrong statement of the law, okay, was an abuse of discretion. And I think a number of things were decided by Judge Mendoza with respect to that particular issue. Why as a practical matter did you just not follow it? I mean, if you thought the Akamai, the most recent Akamai opinion supported your cause of action and would have led you to prevail, why didn't you just file a new complaint? File a new complaint? Yes. Is it because of there's no doubt the only damages were early in the process or? The issue here is that there's reissued preclusion. That's the thing that, of course, we must deal with. A determination was made and that stands on- Your preclusion as to the product that was accused. Excuse me? As to the product that was accused. Yes, for that time period. What happens if there's new product for a new time period? I'm sorry? New product for a new time period. Oh, the same product for a new time period. Yeah, it's the same. Yeah, according to the Dow Chemical Rule. Let's assume that you follow up on what the Chief Judge was suggesting, that you have the same product in a new time period, you bring your lawsuit. I did. Yeah, you bring your lawsuit, which is not what we have in front of us now. We have 60B6 on the old one. So you bring your new lawsuit and a trial judge says, well, I'm going to throw you out of court, that's already been adjudicated. Right. Well, then your question is ripe because the possibility that you're having a prospective application of the old law is clear in that case. And that judge could say to me, well, why didn't you seek relief from the judgment in the lower court in the first case? Well, that's what you're here for. That's right. That's exactly right. Yeah. And that's what I need. Perhaps what you're here for is you lose here, but at least you've covered your ground. Well, I don't expect to lose here, quite frankly, because I think the fact is that the other issues involved were whether or not this is an extraordinary case. Okay. And of course, Assume both ways are wrong. Then I'm coming clear in my mind for sure why you're here. Okay. So you don't want to be bounced out of district court later that said you failed to exhaust your remedies. And I also want to go back into this case because we still are owed damages from the very first. Well, that would be a different matter. Whether you get another bite of the apple based on a change in law. Yeah, but I got another bite of the apple in this case based on the change in law by reason of the fact that it's an extraordinary situation. And it's extraordinary because? What's extraordinary about it? Because this court didn't about face in Akamai. The change in law is always extraordinary? No, no. Not always extraordinary. This is definitely extraordinary. Why is this more extraordinary than other cases in which the law gets changed? Oh, no. Law gets changed frequently by reason of additional circumstances that go down the line. This is this thing occurred within the context of the Muni Auction decision, the Muni Auction case. And it was of great length, of course, in all the Akamai decisions decided. Well, Muni Auction isn't overruled. It is not? Well, it's not overruled. If you bring me a case in which there is a contractor agency, right, we're going to find joint action. Yeah, but that's also already covered under a decision without Muni Auction. That's covered under BMC because there's control and actual vicarious liability shown. That's not the point. The point is, of course, is that we were governed by Muni Auction because we didn't have a contractual or agency relationship with the voter. Not we, the defendant didn't have a contractual. Go ahead. I'm sorry. Your attempt to show prospective impairment is unripe at the moment. It'll be ripe at a time when you bring a lawsuit based on new product, but the same as the old product, but at a new timeframe alleging infringement, and you're told that you're non-suited by your previous decision. No, Your Honor, I don't think that's correct. In fact, the prospective nature of the decision is such as shown in a declaratory judgment action, which is what this was. That was part of the defendant's approach to the defense. The prospective component exists without the necessity for confronting it in the future. In this particular case, we are confronting it now within the case where it was decided. That's the issue. Well, you want to retry your original case. I never got a trial. Well, you would like to bring anew the case against the old product. You'd like to try that case again. Well, I would like to try it for the first time. Under the new law. I would also like a summary judgment against them because the proof was that absent… Well, I say, Trey, you'd like to have your day in court. For once, yes. On your original complaint. For once, yes. On something that happened in the past. Yes. Based on new law. Right, because the fact is… Can you cite me a case in which anybody's ever achieved that result? Well, I've cited two cases that deal with the matter of the result being turned around. I mean, the case of Ritter, for instance, which was cited by the district court. And I can't understand why he would cite that case, but it was a case involving 60B6. And I think you're probably familiar with the brief, so I think it would be only necessary for me to say this particular case sent a man back to death row. Because over a period of five years from the time that there was an initial determination in the same case. So, I mean, I don't see that we're saying, well, there's an original case and therefore that's all done with and all you have is perspective. I don't think that's true. Because I think in this case, judging from Ritter, which is, of course, a 11th Circuit case, and judging from Agostini, all the elements exist for relief from the final judgment. And if we don't have, I mean, I think the basic problem is that the other side denies that there's even a change in the law. If you read their briefs. Doesn't Ritter require more than just a change in the law? No, of course, extraordinary circumstances. So in this situation you're looking at a change in the law. What more do you have? Extraordinary circumstances. What are those? The circumstance where we have a determination of law, a case that collapsed a good number of the method cases. That's a change in law. No, no, that has to do with the fact that it's extraordinary that that occurred. Are you saying the extraordinary portion is the consequences that that had? Certainly, Your Honor. Okay, well, you want to just give us a sample of that? I mean, is it a consequence of it was worth thousands of millions of dollars that you can't ever pursue again? I mean, what are the extraordinary circumstances? We couldn't even get to that stage, but that's neither here. I don't think that's particularly relevant. Okay, so I'm asking you what's relevant. What are those extraordinary circumstances? Well, the extraordinary circumstances is the destruction of intellectual property. And in doing so, I mean, in advance of any claims ever being brought. Our claim, our patents were granted back in 2003 and 2005. By the way, your patents were not invalidated in this proceeding. Oh, yeah. One of the claims, two of the claims were. Your real claim here was you failed in your infringement claim. You failed in your infringement claim. I don't think I failed. I think the court below, in fact, found in our favor with respect to the facts related to the infringement. Namely, that the defendant developed and marketed. Why didn't you get a judgment in your favor then? Really? Why didn't you get a judgment in your favor? Because of the immunity auction doctrine. You're talking about in your original, not the 60B. Which court are you talking about? The original action. Original action, you lost. I didn't lose. The judge found that all the elements that were required for infringement, you see, were present. And you got a monetary reward? No, no. We never got to that stage. The judge found that all of the elements that were there were present. Namely, the... But you lost the case. We didn't lose the case because we still had 90 valid claims, which could be prosecuted if we did not have the prospective effect of immunity auction. You see? And that's how it was decided. I'm missing something. I thought you originally filed a claim for infringement. You wanted... And you wanted money. Yes. And my understanding was that there was a final order in some courts, some places, that said your claim fails. You don't get a money reward. We don't even get to try that case. It was on summary judgment. Right. So what was the summary judgment? Dismissed? What was the answer? What happened to the case? The case was... It was judgment entered against the plaintiff because of non-infringement because of the immunity auction doctrine. Right, right. So you lost. Well, I... But the point is, there's the reason for the loss, is the immunity auction doctrine. Right. You said, well, by golly, if I'd been able to turn... If that case had been decided under the new Akamai, you think you would have won. Well, it wasn't a question of being... Remember, this immunity auction case was decided in 2008, okay? And it came along and destroyed all of the cases, all of the method patents that did not have a relationship... Agency or contract. Agency or right. And that is extraordinary. I can't imagine why it wouldn't be. Okay. Well, you've exceeded your rebuttal time. Why don't we hear from the other side and we'll restore two minutes. Mr. Evans. May it please the court. I'm Robert Evans here for all the defendants. And I submit that there are three reasons for affirming Judge Mendoza in this decision. Tell us. What happened below. This discussion we're having as to what happened at the... On the first trial, the first case in front of Judge Fawcett, we moved for summary judgment of non-infringement and invalidity. The counter motion was for validity of all the claims. And so we were faced with defending the validity or proving the invalidity of 90 some odd claims. And so, and non-infringement. And so there's a lot of information. And so we focused on the asserted claims and showed that they were not infringed and that they were invalid, we believe. Judge Fawcett ultimately, through a series of motions, concluded that none of the claims were infringed. Claim 94 was invalid as indefinite. And claim 49 was invalid based on prior art to Benson. Some of the other asserted claims she found was a question of obviousness to be decided later. But since there was no liability left, she entered judgment for the defendants. And there was no monetary reward. It came up to this court on appeal and that that was affirmed in all respects. In all respects. Yes. I submit it's not. And cert was denied, as I recall. Cert was denied and reconsideration. Motion for re-hearing was denied, cert was denied. Motion for re-hearing at the Supreme Court. Cert was denied. Not denied. Due process. Yeah. So I think as we sit here today, there's three reasons, independent reasons, for affirming the denial of the motion to reopen. The first was the failure to comply with the local rule. The second is the failure to meet the requirements of Rule 60. And the third is that even under the Munity Auction Law, as modified by Act of my four, you reach the same outcome. With respect to the local rule, the district judge, Judge Mendoza, he expressly found the plaintiff's effort to apply the relevant law to its present request is either non-existent or markedly inadequate. He did that at Appendix 008. How does that come a cropper of a local rule? How does that fact come a cropper of a local rule? The local rule says that you have to submit a legal memorandum in support of your motion. And you have to explain, you apply the law to the facts. The judge below didn't throw out the motion on the grounds of a failure to comply with the local rule. He did, yes. He did? He found as an independent basis, the violation of the local rule was in and of itself a ground to... And what's our standard of review on that issue? Abuse of discretion. That was not briefed by plaintiff as to why that was not abuse of discretion as a local rule violation. So that's ground one. We put that aside. We look at Rule 60. Rule 60, Section B-5 says you need something prospective. Something prospective is not just the effect of a judgment. That's Gibbs. You need something more than that. And typically in the context of a declaratory judgment, it's a declaratory judgment where you're exercising ongoing supervision of conduct, of changing circumstances, of things like that. That was explained in detail in the DeWerth decision of the Second Circuit. And so if you said that every declaratory judgment has a prospective effect or every entered judgment has a prospective effect, you would never have any finality because certainly if you order someone to make a payment and it takes some time, that has a prospective effect. And so the case law is clear that you need more than just a settled past matter. You need a supervision of ongoing conduct. If you were a defendant in a patent case and you had been held to infringe, right, and there was an injunction against you to prevent you from infringing in the future, there would be prospective effect, right? Potentially, yes. Yes. And then under Rule 60B-6, you have to have something more than just a change in the law. The Ritter decision, the Gonzalez decision, both of those have been very clear that merely a change in the law does not constitute an extraordinary situation sufficient to justify reopening the judgment. In Ritter, there was a habeas petition that was still in play, and that in-play petition is the petition that was affected as a function of the change in the law. This is a case where mandate was entered after the petition at the Supreme Court was denied, and two and a half years later, there's an attempt to reopen that judgment. And so I submit that since Rule 60's requirements haven't been met, the entry of judgment is not a prospective event. There is no extraordinary circumstance here. A mere change in the law does not qualify that you don't meet Rule 60, and under the abuse of discretion standard, judgment as it should be affirmed. And then lastly, when you say, okay, well, what really happened here? You know, what really happened to Muni Auction? What happened to Muni Auction is that it originally said you look for an agency-partnership relationship or else you look for some type of a contractual relationship. And if you find them, then you can attribute the acts of a second party to the first party under the context of a direct infringement analysis. What happened, I think, at the end of Act of May 4 is that they added a third way of meeting the Muni Auction direct infringement test.  upon the performance of a step or steps of a patented method and establish the manner or timing of that performance, then you can also be liable for the acts of another party. So Muni Auction wasn't overruled. It was just expanded. In the absence of a contract or... Yes, it's an alternative way to meet Muni Auction. A third way. Yes, a third way. A more relaxed way. Yes, yeah. So when you look here and you say, what are the claim elements? Two of the claim elements are that the voter, as they vote, have to affirmatively... The step element is exactly... It says comparison by the voter of the printed vote with the computer screen and decision by the voter as to whether the ballot is acceptable. And so the voter has to affirmatively make a comparison between a piece of paper and the screen they're voting on and it has to affirmatively make a decision that, yes, that those two are both acceptable. You don't have to do either one of those to vote on any of the accused equipment. It's like at the gas station. You get a receipt for your gas. You don't have to compare it to the pump. You buy groceries. You don't have to compare the receipt to the cash register. You can vote, hit vote, walk out of the booth, and these two method steps have never been performed. Since we don't condition voting on performance of those two method steps, they're simply missing. If they're missing, there can be no direct infringement. So it doesn't matter. The fact that it's standard changed doesn't matter. And when you look at the Act on my floor, it said we still look to issues or still look to the principles of a carrier's liability for determining direct infringement in the context where there's two parties. It also said immunity option, it says, arm's-length cooperation will not give rise to direct infringement. So if you simply have arm's-length cooperation, that's enough. The Supreme Court, when it looked at this in the Limelight decision, Limelight v. Akamai, it said we assume without deciding that immunity option was correctly decided. And so there's no reason to believe that any of these rules of law have changed other than the broadening of the standard to include the situation where you condition participation on the completion of the claim elements. And so I think that even though there has been a change in the law a little bit, it hasn't been much, and it certainly hasn't been enough to create the issue of direct infringement here. When this court looked at this case the last time and they applied the directional control test, they said that that is far from the case before us, that there was directional control here. And so far from the case before us was the situation last time. That's when they looked at the issue where they said the voter is not required to compare the vote against the paper against the screen. It is not required to reach a decision. Those elements don't need to be met to vote. Therefore, there's no conditioning. So I think for any one of those three reasons, you can affirm, and there's no reason not to affirm, that I'm aware. I'm also not aware of any case where anybody post-mandate reopened a judgment in these kinds of circumstances. Thank you. Thank you. Do I have any time? We'll give you two minutes for rebuttal. You've exhausted your time, but you can have some rebuttal. Just on the last note, Mr. Evans. Why don't you wait until you get here? Yes, I'm sorry. I apologize for the microphone. Just on the last note, indeed, what he said is correct and a correct statement from the decision. What they were referring to, however, is that there was no, and they cited uniauction for the fact that there was no contractual or agency relationship involved. And that was the basis for their decision. That is the case that they cited in support of the motion, in support of their position that there was no control or supervision or the like of that. And I want to draw the court's attention to the fact that this, of course, before the lower court and before the appellate court, was shown to be related to an election. And elections are not conducted like, you know, in a gas station or checking your stuff against the supermarket register. This has to do with how an election is to be conducted, and it only can be conducted according to law that the jurisdiction is subject to. So the jurisdiction buys the voting equipment, and the voting equipment comes with certain instructions as to how it is to be used. And the jurisdiction is bound to use the voting equipment according to the instructions by reason of the fact that that equipment is certified for that purpose. So the whole notion, the whole background of elections is in play. And so consequently, the last statement by Mr. Evans I believe was completely incorrect, as if though the voter is completely on his own when he's in the process of voting. Thank you very much. Thank you. We thank both sides, and the case is submitted.